UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES K. CEBALLOS,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>   Defendant. | Case No. CV 14-8183 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On October 22, 2014, plaintiff James K. Ceballos ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 27, 2014 Case Management Order ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 10, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 20, 119). Plaintiff asserted that he became disabled on January 20, 2005, due to a heart condition. (AR 140). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on October 13, 2009 ("Pre-Remand Hearing"). (AR 29-68, 586-625).

On October 19, 2009, the ALJ determined that plaintiff was not disabled through June 30, 2008 (*i.e.*, the "date last insured"). (AR 20-28, 545-53). (The October 19, 2009 determination will hereinafter be referred to as the "Pre-Remand Decision"). The Appeals Council denied plaintiff's application for review of the ALJ's Pre-Remand Decision. (AR 554).

On February 1, 2012, this Court entered judgment reversing and remanding the case for further proceedings because it determined that the ALJ erred in assessing the medical opinion evidence. (AR 564-76). The Appeals Council in turn remanded the case for a new hearing. (AR 581-84). On remand, the ALJ held a hearing on August 29, 2012 ("Post-Remand Hearing"), during which the ALJ heard testimony from plaintiff (who was again represented by counsel). (AR 516-40).

On September 28, 2012, the ALJ again determined that plaintiff was not disabled through the date last insured ("Post-Remand Decision").[1] (AR 496-505).

---

[1]The ALJ stated that his discussion in step two regarding plaintiff's physical and mental impairments, his discussion of the medical evidence, and his credibility analysis regarding

(continued...)

Specifically, the ALJ found that through the date last insured: (1) plaintiff suffered from the following severe impairments: syncope and ventricular tachycardia, dilated cardiomyopathy (alcohol related), status post internal cardiac defibrillator/pacemaker generator placement and subsequent change, hepatitis C, and history of tobacco and polysubstance abuse (AR 499-502); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 502); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 502-03); (4) plaintiff could perform his past relevant work as a trouble locator/test desk (AR 504); and (5) plaintiff's allegations regarding the intensity, persistence, and limiting effects of his subjective symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 26, 504).

On August 23, 2014, the Appeals Council deemed the Post-Remand Decision to be "the final decision of the Commissioner of Social Security after remand by the court." (AR 480).

---

(...continued)
plaintiff's physical complaints were incorporated by reference into, and thus supplemented by, the Pre-Remand Decision.). (AR 500, 502-04).

[2]The ALJ determined that: (i) plaintiff could exert up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects; (ii) "[a] job should be rated as light work when it involves walking or standing to a significant degree or requires sitting most of the time but entails pushing or pulling of arm or leg controls and/or requires working at a production rate pace entailing the constant pushing and pulling of materials even though the weight of those materials is negligible"; (iii) plaintiff could stand and walk up to 6 hours in an 8-hour workday with normal breaks; (iv) plaintiff could perform work that does not require climbing ladders, ropes, scaffolds, and could do no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling; (v) plaintiff could perform work that does not involve even moderate exposure to environmental irritants, poorly ventilated areas, and hazardous machinery, unprotected heights, or other high risks, or hazardous or unsafe conditions; and (vi) plaintiff could perform work in a low stress environment, which is defined as work that does not have unusual, very fast pace or production rate requirements. (AR 502-03).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

experience, allow the claimant to adjust to other work that
exists in significant numbers in the national economy?  If so,
the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B.    Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

(quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if (1) the error was "inconsequential to the ultimate nondisability determination"; or (2) despite the error "the [ALJ's] path may reasonably be discerned[,]" even if the ALJ's decision was drafted "with less than ideal clarity[.]" Id. (quoting Alaska Department of Environmental Conservation v. Environmental Protection Agency, 540 U.S. 461, 497 (2004)) (internal quotation marks omitted). In either case, an error may not be deemed harmless unless a reviewing court "can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination" absent the alleged error. Marsh v. Colvin, __ F.3d __, 2015 WL 4153858, *2-*3 (9th Cir. July 10, 2015) (citation omitted).

A court may not find an ALJ's error harmless based on "independent findings" gleaned from the record evidence. Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 4620123, *4 (9th Cir. Aug. 4, 2015) (citations omitted); see also Marsh, __ F.3d at __, 2015 WL 4153858, at *2 (district court may not use harmless error analysis to affirm decision "on a ground not invoked by the ALJ") (citing Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947) (courts must judge propriety of administrative agency decision "solely by the grounds invoked by the agency")). Where harmlessness is unclear, and there is a "substantial likelihood" that the ALJ's error was prejudicial, the court may remand the case to permit the ALJ to determine "whether re-consideration is necessary." Marsh, __ F.3d at __, 2015 WL 4153858, at *2-*3 (citing McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011)) (internal quotation marks omitted). Remand is not

appropriate, however, "where harmlessness is clear and not a borderline question[.]" Id.

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

#### 1. Pertinent Facts

In January 2005 Dr. Naheed Olsen implanted an implantable cardioverter defibrillator ("ICD") device into plaintiff to address an abnormal heart beat, and replaced the ICD generator in June of 2008. (AR 224-25, 320, 333).

In a December 5, 2008 Cardiac Impairment Questionnaire check-box form ("December Form"), plaintiff's treating cardiologist, Dr. Anh Duong, diagnosed plaintiff with Class 3 heart failure under the New York Heart Association clinical classifications ("NYHA"),[3] checked off "positive clinical findings" for plaintiff of "shortness of breath," "fatigue," "weakness," and "palpitations," noted primary symptoms of "shortness of breath," and noted that echocardiogram results showing ejection fraction of 25-30%[4] supported the diagnosis. (AR 357-58). Dr. Duong opined that plaintiff (i) could sit for eight hours, and stand/walk for two hours in an eight-hour work day; (ii) could lift or carry up to 10 pounds occasionally; (iii) would likely be absent from work about once a month due to his impairments;

---

[3] "[NYHA] clinical classifications of heart failure [] rank patients as class I-II-III-IV, according to the degree of symptoms or functional limits." Heart Failure Overview, WebMD website available at http://www.webmd.com/heart-disease/heart-failure/ heart-failure- overview?page=2#1. NYHA Class III heart failure involves "Marked limitation of physical activity. Comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, or dyspnea." See Classes of Heart Failure, American Heart Association website available at http://www.heart.org/ HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp.

[4] "The ejection fraction is a measurement of the heart's efficiency and can be used to estimate the function of the left ventricle, which pumps blood to the rest of the body. . . . [¶] A normal ejection fraction is more than 55% of the blood volume." Ejection Fraction, WebMD Web Site, available at http://www.webmd.com/hw-popup/ejection-fraction.

(iv) had "depression" which contributed to the severity of his symptoms and functional limitations; (v) would "periodically" experience "pain, fatigue and other symptoms (including psychological preoccupation with his[] cardiac condition, if any) severe enough to interfere with attention and concentration"; and (vi) could tolerate "low stress" work. (AR 359-61). Dr. Duong also identified (using check marks) "other limitations that would affect [plaintiff's] ability to work at a regular job on a sustained basis," specifically "psychological limitations"; the need to avoid fumes, gasses, temperature extremes, dust, and heights; and "no" pushing, pulling, kneeling, bending, or stooping. (AR 361). Dr. Duong identified 2005 as the "earliest date" to which "the description of symptoms and limitations in [the] questionnaire applie[d]." (AR 361).

### 2. Pertinent Law

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provided them, namely "treating physicians," "examining physicians," and "nonexamining physicians." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Orn, 495 F.3d at 631 (citations and quotation marks omitted). An examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of a treating or examining physician by providing "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating or examining physician's opinion is

1  contradicted by another doctor's opinion, an ALJ may reject the treating/
2  examining opinion only "by providing specific and legitimate reasons that are
3  supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and
4  footnote omitted).

5  An ALJ may provide "substantial evidence" for rejecting a medical opinion
6  by "setting out a detailed and thorough summary of the facts and conflicting
7  clinical evidence, stating his [or her] interpretation thereof, and making findings."
8  Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th
9  Cir. 1998)) (quotation marks omitted); Thomas v. Barnhart, 278 F.3d 947, 957
10 (9th Cir. 2002) (same) (citations omitted); see also Magallanes v. Bowen, 881 F.2d
11 747, 751, 755 (9th Cir. 1989) (ALJ need not recite "magic words" to reject a
12 treating physician opinion – court may draw specific and legitimate inferences
13 from ALJ's opinion). An ALJ "must do more than offer [] conclusions." Embrey
14 v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d
15 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating
16 physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his
17 [or her] own interpretations and explain why they, rather than the [physician's],
18 are correct." Embrey, 849 F.2d at 421-22.

19     **3.     Analysis**
20 Here, plaintiff essentially contends that the ALJ improperly rejected Dr.
21 Duong's Opinions regarding plaintiff's cardiac impairment and related physical
22 limitations. (Plaintiff's Motion at 17-19). The Court disagrees.
23 First, the ALJ properly rejected such opinions because they were not
24 supported by Dr. Duong's own treatment notes or the record as a whole. See
25 Bayliss, 427 F.3d at 1217 ("The ALJ need not accept the opinion of any physician,
26 including a treating physician, if that opinion is brief, conclusory, and
27 inadequately supported by clinical findings.") (citation and internal quotation
28 marks omitted); Connett, 340 F.3d at 875 (treating physician's opinion properly

9

rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as the ALJ noted, in the December Form Dr. Duong noted positive clinical findings for plaintiff of "shortness of breath, fatigue, weakness, and palpitations." (AR 26, 357). The minimal treatment records from Dr. Duong himself, however, reflect that on February 18, 2008 plaintiff did not report symptoms of palpitations, weakness, or orthopnea (*i.e.*, shortness of breath while lying down), and on examination plaintiff had normal heart rate and regular rhythm. (AR 325). On May 28, 2008, plaintiff again reported no palpitations, weakness, or orthopnea, and had dyspnea (shortness of breath) only "after [a] 1 mile walk." (AR 336). As the ALJ also noted, during June 2008 examinations following the ICD implantation, plaintiff told Dr. Olsen that he had "no shortness of breath, dizziness, [or] palpitations," and said "[h]e is able to walk 1 mile without difficulty." (AR 25, 229, 232).

Second, as the ALJ also noted, contrary to Dr. Duong's designation of plaintiff's heart failure in February and May 2008 as NYHA Class 2, and progress notes from May and June of that same year which reflected that plaintiff could walk without difficulty for up to 1 mile (AR 325-26, 334, 336-37), in October 2008 Dr. Duong classified plaintiff as NYHA Class 3 (apparently based on plaintiff's assertion that he was only able to walk for two blocks without resting), despite finding that plaintiff's heart condition was "stable and well-controlled" and despite the lack of other medical evidence to support a "sudden decline in [plaintiff's] ability to walk" between May and October 2008. (AR 349-51, 357); see Carter v. Astrue, 472 Fed. Appx. 550, 551-52 (9th Cir. 2012) ("[A] discrepancy between a doctor's opinion and his other records constitutes a 'clear and convincing reason for not relying on the doctor's opinion.'") (citing Bayliss, 427 F.3d at 1216). While plaintiff suggests that the medical evidence actually supports Dr. Duong's Opinions (Plaintiff's Motion at 17-19), this Court will not

second-guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citation omitted).

Finally, even assuming, for the sake of argument, that the ALJ improperly rejected Dr. Duong's Opinions, any error would have been harmless since the vocational expert essentially testified at the Pre-Remand Hearing that plaintiff (or a hypothetical individual with the same characteristics as plaintiff) would still be able to perform plaintiff's past relevant work as a "trouble locator/test desk," even with the physical limitations to which Dr. Duong opined. (AR 505) (citing AR 62-63).

Accordingly, a remand or reversal on this basis is not warranted.

### B. The ALJ Properly Evaluated the Severity of Plaintiff's Impairments

Plaintiff contends that a reversal or remand is warranted because the ALJ found no severe mental impairment at step two of the sequential evaluation process. (Plaintiff's Motion at 19-22). The Court disagrees.

#### 1. Pertinent Law

At step two, a claimant must present evidence of "signs, symptoms, and laboratory findings"[5] which establish a medically determinable physical or mental impairment that is severe and, at least, has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii).

///

---

[5] Medical "[s]igns are anatomical, physiological, or psychological abnormalities which can be . . . shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b). "Symptoms" are an individual's own perception or description of the impact of a physical or mental impairment. 20 C.F.R. § 404.1528(a).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" only if the evidence establishes a "slight abnormality" that has "no more than a minimal effect" on a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted).

When reviewing an ALJ's findings at step two, the district court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Id. at 687 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

### 2. Analysis

First, substantial evidence in the medical record clearly supports the ALJ's determination at step two that plaintiff did not have a severe mental impairment. In determining whether or not a plaintiff's mental impairment is severe, ALJs are required to evaluate the degree of mental limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities.[6] See 20 C.F.R. § 404.1520a(c)-(d). Here, the ALJ found no limitations in plaintiff's activities of daily living, only mild limitations in plaintiff's social functioning, concentration, persistence, and

---

[6]Basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting. See 20 C.F.R. § 404.1521.

12

pace, and no episodes of decompensation of extended duration. (AR 23, 500, 504). As discussed below, the ALJ reasonably found that the record medical evidence did not reflect any more significant mental limitations. To the extent plaintiff suggests that other medical records demonstrate that his mental impairments have more than a minimal effect on his ability to work (Plaintiff's Motion at 21), this Court will not second-guess the ALJ's reasonable determination to the contrary.

Dr. Duong's opinions regarding plaintiff's mental condition do not undercut the ALJ's findings at step two. In the December Form, Dr. Duong checked "yes" when asked if "emotional or psychological factors contribute to the severity of [plaintiff's] symptoms and functional limitations" and simply wrote "depression" when asked to "explain" his response. (AR 360). Dr. Duong also checked off on the form that "psychological limitations" affected plaintiff's ability to work. (AR 361). As the ALJ noted, Dr. Duong did not explain his check-box opinions, nor did the December Form document any specific clinical findings or objective medical evidence in support thereof. (AR 360-61, 500). In addition, apart from cursory notes that plaintiff was prescribed Fluoxetine (originally "if needed for stress") (AR 160 230, 233, 244, 283, 303, 307, 312, 324, 326, 328-30, 335, 337, 340, 343-44, 350, 352, 393, 420, 450), and plaintiff's testimony that he attended an anxiety therapy group for twelve weeks (AR 59), as the ALJ noted, the record contains little evidence of "significant objective findings and related mental treatment records" to support any psychological abnormality that has more than a minimal effect on plaintiff's mental abilities. (AR 501). The ALJ properly rejected Dr. Duong's opinions regarding plaintiff's mental condition on these grounds. See Bayliss, 427 F.3d at 1217; see, e.g., Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ [] permissibly rejected [medical evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions."); De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir.

2009) (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of the bases of their conclusions.'") (citing id.); see also Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

The ALJ did not, as plaintiff argues (Plaintiff's Motion at 21), fail adequately to develop the record pertaining to plaintiff's mental functioning. Although a claimant bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted); Bustamante, 262 F.3d at 954; see also Webb, 433 F.3d at 687 (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered). Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. See 20 C.F.R. § 404.1519a.

Here, the ALJ was not, as plaintiff contends, required to re-contact Dr. Duong to obtain clarification for the check-off opinions regarding plaintiff's mental condition. See De Guzman, 343 Fed. Appx. at 209 (ALJ has no obligation to recontact physician to determine the basis for opinions expressed in "check-off reports that d[o] not contain any explanation of the bases of their conclusions.") (citation and internal quotation marks omitted). In addition, it was reasonable for the ALJ to deny plaintiff's request for a consultative psychological examination in October 2009 based on the ALJ's determination that such an examination would not have produced evidence that was material to plaintiff's mental condition during the relevant period (*i.e.*, on or before June 30, 2008). (AR 501); see Breen v. Callahan, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the

presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision") (citing Smolen, 80 F.3d at 1288; Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991)); see also Johnson v. Astrue, 2010 WL 2102828, *2 (E.D. Cal. May 24, 2010) ("Ordering a consultative examination ordinarily is discretionary . . . and is required only when necessary to resolve the disability issue.").

In addition, the ALJ did not, as plaintiff asserts (Plaintiff's Motion at 22) "completely ignor[e]" the opinions expressed by Dr. Ryu in a mental assessment letter dated August 20, 2012. The ALJ simply found that the assessment "offer[ed] no reliable evidence of [plaintiff's] mental state on or prior to June 30, 2008, which would support the presence of 'severe' mental impairments" since such evidence "post-date[d] the date last insured." (AR 502) (citing AR 1341-43). The ALJ's conclusion is supported by substantial evidence. In short, Dr. Ryu's assessment almost exclusively addressed plaintiff's mental condition at the time the assessment was conducted, which was many years after plaintiff's date last insured. (AR 1343). In addition, the ALJ was entitled to disregard Dr. Ryu's conclusory opinion that plaintiff "became disabled in December 2002. . . ." (AR 1343); see Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide explanation only when rejecting "significant probative evidence") (citation omitted). A physician's statement that a claimant is "disabled" or "unable to work" is a non-medical opinion that is not binding on the Commissioner. See 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a

///

claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance.").

Accordingly, a remand or reversal is not warranted on this basis.

### C. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff contends that a remand or reversal is warranted because the ALJ inadequately evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 22-25). The Court disagrees.

#### 1. Pertinent Law

When a claimant provides "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged," and there has not been an affirmative finding that the claimant was malingering, the ALJ may discount the credibility of the claimant's statements regarding subjective symptoms only by "offering specific, clear and convincing reasons for doing so" supported by substantial evidence. Brown-Hunter, 2015 WL 4620123, at *5 (citation and internal quotation marks omitted). This requirement is very difficult to meet. See Garrison, 759 F.3d at 1015 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and internal quotation marks omitted). An ALJ must identify the specific testimony that lacks credibility, provide "clear and convincing reasons" why the testimony is not credible, and identify the specific evidence in the record which supports the ALJ's determination. Brown-Hunter, 2015 WL 4620123, at *1, *6 (finding legal error where ALJ failed to identify testimony she found not credible and failed "[to] link that testimony to the particular parts of the record supporting her non-credibility determination").

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work

record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p.

If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

### 2. Analysis

First, as discussed above, the ALJ reasonably concluded that through the date last insured, there was no evidence that plaintiff had a severe mental impairment. (AR 504). Thus it was reasonable for the ALJ to conclude that plaintiff's subjective complaints about his psychiatric condition were "unsubstantiated." (AR 504); see, e.g., Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (ALJ need not evaluate credibility of subjective complaints absent evidence of an impairment that could reasonably be expected to cause the subjective symptoms alleged) (citations omitted).

Second, the ALJ properly discredited plaintiff's subjective complaints of physical limitations due to internal conflicts within plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). For example, the ALJ reasonably determined that plaintiff's statement that he stopped working due to his heart condition (AR 140) was inconsistent with plaintiff's testimony which suggested that plaintiff had left his job "because of what he

considered unreasonable demands of the workplace," not due to any physical disability. (AR 26; AR 40, 50-53, 522-525). Indeed, plaintiff testified at the post-remand hearing that he "retired in 2002," but did not start "having [] heart trouble [until] January 2005" (*i.e.*, plaintiff's alleged onset date). (AR 20, 526). While plaintiff argues that the record actually reflects that he stopped working "because of his medical conditions" (Plaintiff's Motion at 24), this Court will not second-guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citation omitted).

Third, the ALJ properly discounted plaintiff's credibility because the alleged severity of plaintiff's physical symptoms was inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); see also Burch, 400 F.3d at 681 (ALJ may consider claimant's "daily living activities" when assessing credibility). For example, as the ALJ noted, contrary to plaintiff's testimony that he has limited stamina and needs to rest after walking for only two to three blocks (AR 45), plaintiff testified that he did "a lot of housework," he took care of "the mopping and the laundry[,] the dishes" and cooking, and although the housework would take him "all day," plaintiff was "still [able to] do it." (AR 46-48, 53-54). Plaintiff also testified that he plays nine holes of golf every two weeks with a friend, and can do so with only one 15 minute break at the sixth hole so plaintiff could "drink water and get [his] second breath." (AR 47, 53).

While plaintiff correctly suggests that a claimant "does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of

conflicting subjective symptom testimony. See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted). Here, even though plaintiff stated that he had difficulty functioning, the ALJ properly discounted the credibility of plaintiff's alleged physical symptoms to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Id. While plaintiff suggests that plaintiff's activities of daily living are not inconsistent with his subjective complaints (Plaintiff's Motion at 24-25), the Court will not second-guess the ALJ's reasonable determination to the contrary.

Finally, the ALJ properly discounted plaintiff's credibility due, in part, to the absence of supporting objective medical evidence. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, the medical evidence reflects, among other things, that leading up to plaintiff's date last insured, plaintiff's congestive heart failure was noted as "stable and well-controlled," plaintiff displayed no significant symptoms related to his heart condition, plaintiff said he could "walk one mile without difficulty," and plaintiff's cardiovascular exams showed normal heart rate, regular rhythm, normal heart sounds, and no gallops, and plaintiff's heart failure was designated as a less

///
///
///
///
///

severe NYHA Class 1 or 2.[7]  (AR 335-37, 340-41); cf., e.g., Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted).

Accordingly, a remand or reversal is not warranted on this basis.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  August 18, 2015

                                        /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[7] NYHA Class II heart failure involves "Slight limitation of physical activity. Comfortable at rest.  Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)."  See American Heart Association website available at http://www.heart.org/ HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_3063 28_Article.jsp.